**HIGHER EDUCATION ASSISTANCE FOUNDATION, Respondent,**

v.

**Earl SINGH, Appellant.**

**No. C3-87-288.**

Court of Appeals of Minnesota.

Dec. 15, 1987.

Review Granted Feb. 17, 1988.

---

Sally A. Scoggin, Briggs and Morgan, St. Paul, for respondent.

Earl J. Singh, ·St. Paul, pro se.

Heard, considered and decided by CRIPPEN, P.J., and FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

This is an appeal from the trial court's grant of summary judgment in favor of respondent Higher Education Assistance Foundation (HEAF). When appellant Earl Singh defaulted on his Minnesota State Student Loan Program (MSSLP) loans, HEAF purchased the loans and brought this action to recover the amount due. The trial court granted HEAF judgment against Singh in the amount of $25,342. We affirm in part, reverse in part and remand for findings consistent with this opinion.

## FACTS

Singh executed three MSSLP promissory notes dated March 26, 1978, August 28, 1978, and November 5, 1979, for a total principal amount of $13,100. Upon default, the promissory notes provided for acceleration of the entire unpaid debt, including interest, attorney fees and costs of collection.

Prior to executing each of the notes, Singh signed a Statement of Student Borrower Responsibilities and Supplementary Information (SSBRSI), which provided future employment difficulties would not

change Singh's responsibility to repay the loan. The SSBRSI also indicated the typical monthly payment, when repayment was to begin and the procedure to be followed upon default.

Singh graduated from law school in May 1980; and was notified by MSSLP that repayment would begin in February 1981, for the 1979 note and in April 1981, for the two 1978 notes. On December 10, 1980, Singh acknowledged receipt of a Student Loan Repayment Schedule and Disclosure Statement. Singh's repayment was to be made over a 10–year period, the maximum payback period allowed.

Singh requested and was granted two six-month unemployment extensions. When Singh's unemployment extension periods expired in August 1982, MSSLP again requested payment.

On November 17, 1982, and March 7, 1983, Singh was notified his loans were delinquent. On December 10, 1982, and March 23, 1983, Singh was notified of the acceleration of his loans. Despite the notices, Singh did nothing to remedy his default status.

After purchasing Singh's loans from MSSLP, HEAF contracted with General American Credits to collect on the notes. When Singh failed to make any payments due under the notes, HEAF commenced this action.

HEAF's suit was filed on January 11, 1985. Over the next year and a half various discovery was conducted, including exchange of responses to interrogatories and responses to requests for admissions.

On August 29, 1986, HEAF filed a motion for summary judgment. Singh filed a motion for leave to bring in MSSLP as a third-party defendant, alleging MSSLP had violated the Fair Debt Collection Practices Act by harassing and defaming him. Both motions were scheduled for hearing on September 12, 1986. The trial court found:

> HEAF is a guarantee agency of Lender under the Guaranteed Student Loan Program. (34 C.F.R. part 682) As a guarantee agency, HEAF is subject to regulations different from those applicable to agencies operating under the Federal Insured Student Loan Program (FISLP). FISLP loans are subject to 34 C.F.R. 682.509–.512 which encourage the lender to consider the financial obligations and income of a borrower in designing a repayment schedule. * * * Guarantee agencies, on the other hand, may establish their own criteria in the collection of their loans. [Guarantee agencies] have no federally imposed obligation to consider a borrower's financial condition before imposing a repayment schedule.

The trial court held neither MSSLP, nor HEAF, had a legal duty under the GSLP to negotiate repayment schedules with Singh and awarded HEAF judgment against Singh in the amount of $25,342.

### ISSUES

1. Did the trial court err by granting summary judgment?

2. Is HEAF entitled to attorney fees?

### ANALYSIS

1. Upon review of a grant of summary judgment, we must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). A material issue of fact is one of such a nature as will affect the outcome of a case depending on its resolution. *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259–60 (1976). The burden is on the party opposing the summary judgment motion to prove that a material issue of fact exists. *Moundsview Independent School District No. 621 v. Buetow & Associates, Inc.*, 253 N.W.2d 836, 838 (Minn.1977). Mere allegations in the pleadings are not sufficient to raise a material issue of fact. *Continental Sales & Equipment Co. v. Town of Stuntz*, 257 N.W.2d 546, 550 (Minn.1977).

Singh contends the following are material issues which preclude summary judgment: (1) the amount of payment he was able to make and when he could make the payments; (2) the amount actually owed by Singh; and (3) HEAF's forbearance policy.

Singh also asserts he was defamed by the collection agent hired by HEAF.

The regulations governing the Guaranteed Student Loan Program (GSLP) are contained in 34 C.F.R. § 682. The GSLP consists of two parts, guarantee agency programs and the Federal Insured Student Loan Program (FISLP). 34 C.F.R. § 682.100. While certain subparts of the regulations apply to both guarantee agency programs and FISLP programs, other subparts apply only to one or the other:

> Subpart B contains general provisions that are applicable to all GSLP participants. In addition, guarantee agency programs are subject to Subparts C, D and F, and the FISLP is subject to Subparts C, D, E, F and G.

*Id.* at § 682.103.

Singh contends that as a guarantee agency HEAF had a duty to grant him forbearance in order to prevent him from defaulting. In support of his position, Singh cites 34 C.F.R. § 682.512, which provides, in part:

> (a) The Secretary *encourages* a lender under the FISLP to grant forbearance for the benefit of a borrower in order to prevent a borrower from defaulting on his or her payment obligations. "Forbearance" means permitting the temporary cessation of payments, allowing an extension of time for making payments, or accepting smaller payments than were previously scheduled. A lender *may grant forbearance* under paragraph (b) or (c) of this section whenever poor health or other personal problems affect the borrower's ability to make scheduled payments.

*Id.* (emphasis added). Section 682.512, however, is contained in Subpart E of the regulations, which is not applicable to guarantee agencies such as HEAF. *See* 34 C.F.R. § 682.103.[1]

■ The requirements for guarantee agencies are set forth in 34 C.F.R. § 682.401(c)(2):

> (2) *Dissemination of standards and procedures.* The guarantee agency shall establish and disseminate to concerned parties its standards and procedures for—
>
> \*   \*   \*   \*   \*   \*
>
> (iii) Approval of forbearance;

*Id.* Neither party addressed section 682.-401(c)(2) in its brief, nor was it addressed by the trial court. However, the duty imposed by section 682.401(c)(2) is clear. Guarantee agencies are not required to follow the federal forbearance policy set forth in 34 C.F.R. § 682.512, but are required to: (1) promulgate a policy concerning forbearance standards and procedures, and (2) to disseminate that policy to "concerned parties." *Id.* Thus, HEAF has an affirmative duty to establish and disseminate its forbearance policy to "concerned parties." At oral argument, it was argued the lending institution was the only "concerned party." We disagree. Singh and other borrowers of GSLP loans are clearly concerned parties.

■ In its answers to interrogatories, HEAF admits it has established a forbearance policy. However, the record does not indicate what HEAF's forbearance policy is, nor is there any evidence in the record to indicate whether HEAF's forbearance policy was disseminated to Singh. Singh requested a copy of HEAF's policy during discovery, but it was never provided to him.

Because we cannot determine from the record what HEAF's policy is, we cannot determine whether HEAF complied with it. These are material issues of fact which preclude summary judgment. We therefore find the trial court erred in granting summary judgment.

This case is remanded for the limited determination of whether HEAF complied

---

1. Notwithstanding section 682.103, however, the regulations do instruct guarantee agencies, and thus HEAF, to follow some portions of Subpart E. For example, guarantee agencies are required to grant deferments under the conditions described in section 682.508, which is found in Subpart E. *See* 34 C.F.R. § 682.401(b)(10). However, there is not a similar cross-reference to Subpart E in the regulations concerning a guarantee agency's forbearance policy or forbearance criteria.

with 34 C.F.R. § 682.401(c)(2). We have considered the issues of Singh's ability to pay and the amount owed by Singh. These issues may become relevant in determining whether HEAF complied with its forbearance policy. However, neither are issues of fact material to determining Singh's default. Singh's default has been clearly established. He admits he is obligated to repay the three loans. Singh received notice that employment difficulties after attending school would not alter his repayment obligations. The trial court determined the total amount due, including principal, interest, costs and fees accrued to the date of the judgment.

We have also considered Singh's allegation that he was harassed and defamed by the collection agent hired by HEAF. Singh's counterclaim asserts "[p]laintiff's actions in pursuing this cause of action is without merit and constitutes harassment." It is apparently from this averment and based on alleged statements of the collection agent hired by HEAF, that Singh bases his claim for defamation.

This court's review is limited to consideration of only those issues the record shows were presented to and considered by the trial court in deciding matters before it. *Thayer v. American Financial Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982). Even under the liberal standards of notice pleading, the "harassment" averment in Singh's counterclaim does not state the requisite elements of a cause of action for defamation against HEAF.

■■■ A complaint containing a claim of defamation must allege damage to the plaintiff's good reputation. It is also necessary to allege that the defamatory words were spoken by the defendant and that they were spoken in the presence of other persons. *See generally* 11A Dunnell Minnesota Digest § 3.01. Singh's statement that HEAF's pursuit of this action "is without merit and constitutes harassment" is not an adequate pleading of a defamation claim. Since Singh did not properly plead a cause of action for defamation in his counterclaim and did not raise the issue before the trial court, we cannot consider that issue on appeal.[2]

■■■ 2. Federal regulations applicable to both FISLP and guarantee agency programs permit collection of certain charges, including attorney fees, as collection costs:

> (d) *Collection charges* —(1) *Permissible charges. If provided in the note*, the lender may also require that the borrower pay the lender for certain *reasonable* costs incurred by the lender or its agent in collecting any installment not paid when due. *These costs may include attorney's fees*, court costs, telegrams, and long-distance phone calls.

34 C.F.R. § 682.202(d) (emphasis added).

This regulation gives lenders, such as MSSLP, the option of including in student loan promissory notes a term which provides for collection of reasonable attorney fees incurred to collect any amount due under the notes. Here, each of the three notes Singh signed expressly provide for collection of "reasonable attorney's fees" incurred to collect the loans.

The trial court awarded attorney fees to HEAF. As this appeal is for the collection of Singh's loans, we grant HEAF attorney fees in the amount of $400.

## DECISION

We reverse the trial court's grant of summary judgment and remand this case

---

**2.** Singh did raise claims of defamation and violations of the Fair Debt Collection Practices Act *against MSSLP* in his third-party complaint. That complaint does not raise the defamation claim against HEAF and, at any rate, was dismissed by the trial court. We believe the trial court's dismissal of the third-party complaint was proper. Singh brought a motion for leave to file a third-party complaint pursuant to Minn. R.Civ.P. 14 long after the 45-day "free period" provided in Rule 14 had expired. As the Advisory Committee Comment to Rule 14 states that "an application made after the [45–day] free period will be granted only under exceptional circumstances." It does not appear that the court abused its discretion when it dismissed Singh's third-party claims against MSSLP since the alleged defamatory acts and violations of the Fair Debt Collection Practices Act were committed by a collection agent which was undisputedly not hired by MSSLP.

for the limited purposes of determining HEAF's forbearance policy and its compliance therewith. This decision does not re-open the issue of whether Singh defaulted on his obligation to repay his loans. Singh's default has been clearly established.

Affirmed in part, reversed in part and remanded.