**HIGHER EDUCATION ASSISTANCE FOUNDATION, Petitioner, Appellant,**

v.

**Earl SINGH, Respondent.**

No. C3–87–288.

Supreme Court of Minnesota.

Sept. 2, 1988.

Sally A. Scoggin, Timothy J. Keenan, St. Paul, for petitioner, appellant.

Earl Singh, St. Paul, for respondent.

AMDAHL, Chief Justice.

We granted the plaintiff Higher Education Assistance Foundation's (HEAF) petition for further review to determine whether HEAF, a Guarantee Association under the Guaranteed Student Loan Program is required to disseminate to individual borrowers standards and procedures for loan forbearance promulgated under federal regulations. We hold that it is not so required and reverse that portion of the court of appeals' decision, thereby reinstating a summary judgment entered in favor of HEAF. .

The defendant Earl Singh participated in the Guaranteed Student Loan Program while in law school. In 1978 and 1979 he executed and delivered three promissory notes to the lender, Minnesota State Student Loan Program. Each note provided that failure to make payments when due would accelerate the entire balance at the lender's option. Similarly, the notes provided for collection of attorney fees and costs.

Singh requested and was granted two six-month extensions of the repayment period, as he was unable to locate full-time employment. At the end of the extension periods, he was sent a repayment schedule and request was made for repayment after August 1982. No payments were made and after efforts to reach a solution failed, the lender declared the loans in default.

Pursuant to its obligation as guarantor, HEAF reimbursed the lender in full and in mid–1983, contacted a credit agency to collect from Singh. This was the first direct contact between HEAF and Singh.

This action was commenced when Singh made no payment in response to requests

from HEAF. Singh counterclaimed, alleging that HEAF wrongfully declared the notes in default and alleging bad faith. The trial court granted HEAF's motion for summary judgment and dismissal of the counterclaim.

On Singh's appeal, the court of appeals affirmed the finding of default, 416 N.W.2d 750, the total amount owed to HEAF ($25,342), the dismissal of the counterclaim and the denial of Singh's motion to add Minnesota State Student Loan Program as a third-party defendant. It awarded HEAF an additional $400 as attorney fees for the appeal. As the record clearly supports these aspects of the appellate court's decision, we affirm those portions of the opinion.

However, the court of appeals reversed the summary judgment entered in favor of HEAF and remanded for a consideration of "HEAF's forbearance policy and its compliance therewith." Specifically, the court of appeals determined that HEAF had an obligation to provide Singh with its forbearance policy to allow the latter an opportunity to establish entitlement to loan deferral. We disagree.

The federal regulations under which HEAF operates do not require dissemination by a guarantee association to a borrower.[1] We therefore reverse and direct the reinstatement of summary judgment in favor of HEAF.

The court of appeals relied primarily upon its interpretation of 34 C.F.R. § 682.401(c)(2)(iii) (1986), a rule, in effect at the time this suit arose, governing guarantee agencies.[2] In pertinent part, this rule provides as follows:

> (2) The guarantee agency shall establish and disseminate to concerned parties its standards and procedures for—
>
> \*   \*   \*   \*   \*   \*
>
> (iii) approval of forbearance.

The court of appeals held that Singh and other borrowers similarly situated are "concerned parties" who are entitled to dissemination of that information.

It is our view that the court of appeals' reliance on this rule is misplaced. 34 C.F.R. § 682.401 requires the guarantee agency to enter into a "basic agreement" with the Secretary of Education. The purpose of the basic agreement is to assure the secretary of compliance with the various requirements. A reading of the requirements as a whole demonstrates with clarity that section 682.401 was intended to protect the government and not to require provision of information to individual borrowers. *See* 20 U.S.C. § 1078(c)(2)(A) (1986) (enabling act requires that the basic agreement "shall set forth such administrative and fiscal procedures as may be necessary to protect the United States from the risk of unreasonable loss \* \* \*.").

We conclude that the phrase "concerned parties" to whom HEAF is required to disseminate its standards and procedures are the participating lenders. It is the lenders, not HEAF, who bear responsibility to disclose refinancing and deferral information to the borrower. 34 C.F.R. § 682.205(a)(9) and (11) (1987). Moreover, it is the lender, not HEAF, who is to decide whether to grant forbearance because of poor health or other enumerated personal problems. 34 C.F.R. § 682.512 (1986) *revised* 682.211 (1987). HEAF is only required to disseminate its policies on forbearance to the participating lenders to provide guidance to those institutions in determining whether a particular borrower should be granted forbearance. We note that in its "HEAF Guide," lenders are informed as to these standards and procedures for approval of forbearance.

To require HEAF to disseminate its standards and procedures to all individual borrowers would be unduly burdensome and would, in effect, be of no assistance to the

---

1. The issue of whether HEAF had an obligation to provide Singh with its policy was not raised until the time of oral argument before the court of appeals. An issue may not be raised for the first time on appeal. *Matter of Welfare of K.T.,* 327 N.W.2d 13, 16–17 (Minn.1982).

2. In 1987, the requirement that a guarantee agency disseminate its standards and procedures for approval of forbearance was eliminated. *See* 34 C.F.R. § 682.401(b)(10) (1987).

borrowers. HEAF has no contact with these individuals until after default, at a time when it is perhaps too late to assist the individual borrower. Additionally, a requirement of dissemination prior to default would be unnecessarily costly and would interject HEAF into the process before it had either the opportunity or the responsibility to service the loan.

Finally, the language of the rule itself demonstrates that HEAF is not required to notify these borrowers. The rule requires dissemination of procedures for approval of forbearance and does not require HEAF to establish a policy separate and distinct from that of the lenders. The intent of the rule was to create guidelines for the lenders to follow in granting or denying forbearance and it is those organizations, and not the borrowers who are the "concerned parties."

We therefore reverse that portion of the court of appeals' decision and direct the reinstatement of summary judgment in favor of HEAF.

Affirmed in part; reversed in part and summary judgment reinstated.